**JBK, INCORPORATED, et al., Plaintiffs,**

v.

**CITY OF KANSAS CITY, MISSOURI, et al., Defendants.**

**No. 83–1326–CV–W–0.**

United States District Court, W.D. Missouri, W.D.

Jan. 14, 1986.

---

Claudia York, S.W. Longan, Kansas City, Mo., for plaintiffs.

William D. Geary, Asst. City Atty., Kansas City, Mo., for defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROSS T. ROBERTS, District Judge.

The dispute in this case centers upon an ordinance enacted in May, 1977, by the City of Kansas City, Missouri, regulating massage parlors and like enterprises.[1] Plaintiffs assert the unconstitutionality of various portions of the ordinance, both facially and as applied. They also allege violations of Missouri's antitrust laws. The case reaches me on defendants' motion for summary judgment.

---

1. Ordinance No. 47656, codified as Chapter 8, Code of General Ordinances of Kansas City, Missouri, entitled "Massage Shops, Nude Modeling Studios and Artists—Body Painting," enacted May 6, 1977.

## I.

### CLAIM AND ISSUE PRECLUSION

Case No. CV77–3493 was brought in the Circuit Court of Jackson County, Missouri, on October 24, 1977. The plaintiffs in that action were "J.B.K. Corporation, d/b/a Magic Touch Massage and Health Studio"; Joe B. King, who had been issued an occupational license under the ordinance; and Pamela Maund, who had been issued an apprentice permit under the ordinance but denied a license for failure to pass the required written examination. Plaintiffs later replaced Pamela Maund with one Susan Beer, a licensed masseuse who had acquired all the outstanding stock in J.B.K., Inc. from Joe B. King, and replaced defendant Marvin Van Kirk (Kansas City Police Chief) with his successor, Norman Caron. The other defendants were the City of Kansas City, Missouri; George Lueckenhoff, the Supervisor of the Liquor and Amusement Control Division of the City's Finance Department; and Lillian O'Brien, Marie Cassil and Agnes Mosley, the members of the since-eliminated Board of Massage Examiners.[2] To better understand this case of characters, it should perhaps be noted that the Supervisor of the Liquor and Amusement Control Division is charged with administration of the ordinance, and the police chief with its enforcement.

An amended petition filed on September 29, 1978, alleged that the ordinance established arbitrary and irrational classifications as between massagists and massage establishments and other business persons and businesses, in violation of plaintiffs' due process and equal protection rights (federal and state) (Count II); that various provisions of the ordinance were arbitrary, irrational and unreasonable, and thus violative of plaintiffs' due process rights (federal and state) (Count III); that the ordinance constituted an unlawful delegation of the City's legislative power to the Board of Massage Examiners, placed unlimited, arbitrary and unfettered discretion in the hands of that Board, and provided the Board with unduly vague standards, all in violation of plaintiffs' due process rights (federal and state) (Count IV); that certain provisions of the ordinance constituted an invasion of plaintiffs' rights of privacy (and those of their customers), in violation of various federal constitutional provisions (Count V); that the establishment of a regulatory board composed of plaintiffs' competitors was a violation of plaintiffs' federal and state due process rights, which would restrict competition and "deny access to the profession" (Count VI); that the ordinance had been arbitrarily and discriminatorily enforced as to plaintiffs, in violation of their due process and equal protection rights (federal and state) (Count VII); that the ordinance subjected plaintiffs "to indicia of criminality" on no rational basis, in violation of their due process rights (federal and state) (Count VIII); and that the enactment of the ordinance was beyond the authority of the City Council (Count IX). In addition, there were scattered allegations that the ordinance did not provide for the publication of rules and regulations, as allegedly required by § 536.010, R.S.Mo. (¶ 15.); and that plaintiffs' business operations had been and would continue to be "severely interrupted and damaged" (¶ 17). The prayer requested a declaratory judgment, an injunction, damages and attorneys' fees, the latter two items being sought, presumably, in connection with Count I, which alleged violations of 42 U.S.C. § 1983.

On June 1, 1979, the parties filed a "stipulation" with the court, reciting that they had "resolved the issues in the captioned litigation to their satisfaction," save two: (a) the validity of the requirement relating to the hours of instruction required for an apprentice massagist (§ 8.20(c)); and (b), the validity of the hours of operation provision (§ 8.8(g)). That submission was followed, on a date I cannot determine precisely from the materials at hand, but apparently in February or March of 1980, by

---

**2.** On May 22, 1985, the City Council eliminated the Board of Massage Examiners and vested the authority it had previously exercised in the Director of Liquor and Amusement Control.

a second "stipulation" which recited that the parties had "resolved the issues in the captioned litigation to their satisfaction" except for *three:* the two mentioned above *and* the validity of § 8.19(b) and (c), concerning the examination required of massagist applicants.

This second stipulation was evidently filed in connection with plaintiffs' summary judgment motion, and was followed by the parties' briefs on the three issues mentioned. That motion was denied and the cause was thereafter submitted for a merits determination upon a stipulated set of facts.

On December 30, 1980, the state court entered its judgment in the matter, reciting, insofar as pertinent here, the following:

> The Court finds the facts in accordance with the Stipulation of Facts and concludes that the ordinances of defendant City were constitutional and valid.
>
> Wherefore, it is Adjudged, Decreed and Declared that Ordinances 44006 and 47656 [the full ordinance in question in the present litigation] are constitutional and valid.
>
> It is further Adjudged and Decreed that plaintiffs take nothing by their petition and that defendants go hence without day together with their costs.

No appeal was taken.

\*　　\*　　\*　　\*　　\*　　\*

The present case was filed in this court on December 7, 1983. The plaintiffs are "JBK, Inc.;"[3] LaDonna King, who had been issued an apprentice permit under the ordinance and twice failed the examination; Kathleen D. Fithen, who had been issued an apprentice permit but had not taken the examination; and J. Diane Byrne, who had received a license on March 15, 1974. Defendants are the City of Kansas City, Missouri; Mayor Richard D. Berkley; George Lueckenhoff; Jefferson S. Boone, Administrative Officer of the Liquor and Amusement Control Division; and Lillian O'Brien,

sole member of the Board of Massage Examiners at the time suit was filed. All individual defendants are sued in their official capacities only.

The complaint invokes 42 U.S.C. § 1983, alleging that the ordinance is facially invalid and "overbroad," in violation of plaintiffs' First Amendment rights (Count I); that the enactment and enforcement of the ordinance constitutes a "taking" of plaintiffs' property without just compensation (Count II); that the various regulatory provisions of the ordinance are without real and substantial relationship to the objectives of the ordinance, and thus violate plaintiffs' federal due process rights (Count III); that the ordinance, as enacted, administered and enforced, deprives them of their right "to be free from discriminatory acts of government," in violation of their federal due process rights (Count IV); and that the enactment, administration and enforcement of the ordinance creates an "unequal discriminatory treatment" of plaintiffs, in violation of their federal equal protection rights (Count V). In addition, plaintiffs assert violations of the state antitrust laws, premised upon an alleged continuing conspiracy between the City, O'Brien "and others" to monopologize the "recreational" massage trade, and to restrain trade with respect to "recreational" massage shops and massagists by preventing plaintiffs from obtaining licenses and continuing in business, thus eliminating them as competitors (presumably of O'Brien and "others") (Count VI). The prayer requests a declaratory judgment, an injunction restraining enforcement of the existing ordinance as well as court-supervised preparation and implementation of a new ordinance, and damages.

### A.

#### *JBK, Inc.*

■ Title 28 U.S.C. § 1738 requires that federal courts give the same preclusive ef-

---

3. The affidavit submitted on behalf of JBK in connection with the present motion makes clear that "J.B.K. Corporation" and "JBK, Inc." are one and the same corporate entity. Which is the proper corporate name is something I need not address at the moment.

fect to a state court judgment that the judgment would receive from the courts of the rendering state. *Kremer v. 'Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). Missouri courts recognize and apply both the "traditional" sort of *res judicata* —claim preclusion—and the type known as collateral estoppel—issue preclusion. *Brown v. St. Louis Police Department, Etc.,* 691 F.2d 393, 395 (8th Cir.1982), *cert. denied,* 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983). For reasons which will become apparent, only the former is involved as concerns JBK's claims.

■ JBK was of course a party plaintiff in the state court suit. The opposing parties in that suit were identical to those here, except that Richard S. Berkley and Jefferson S. Boone have now been added as defendants, and Marie Cassil and Agnes Mosley, former members of the now defunct Board of Massage Examiners, have been eliminated. It is clear that the addition of Berkley and Boone has and could have nothing to do with plaintiffs' facial invalidity claims; and it is likewise clear that the presence of additional parties in the earlier suit is an immaterial factor, even for "traditional" *res judicata* purposes, so long as the other requirements of the doctrine are met. *Roach v. Teamsters Loc. U. No. 688,* 455 F.Supp. 322, 324 (E.D. Mo.1978); *In re Delany's Estate,* 258 S.W.2d 613, 616 (Mo.1953); and *see generally* RESTATEMENT (SECOND) OF JUDGMENTS §§ 19, 34 (1982). Accordingly, at least with regard to the three specific matters identified in the parties' second stipulation in the state court action (the facial validity of Ordinance §§ 8.8(g), 8.19(b) and (c), and 8.20(c)), which the court unquestionably addressed on the merits, the judgment in that action precludes JBK's present claims on those subjects. The mere fact that JBK failed to appeal that state court judgment does not lessen its preclusive effect. *Myers v. Bull,* 599 F.2d 863, 865 (8th Cir.1979), *cert. denied,* 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138 (1979); and *see First Nat'l. Bank of Kan-*

*sas City v. Christopher,* 624 S.W.2d 474, 479 (Mo.Ct.App.1981).

■ It is true, as JBK notes, that Missouri law permits a reexamination of matters previously litigated when relevant facts have changed in the interim. *City of Hardin v. Norborne Land Drainage Dist.,* 360 Mo. 1112, 232 S.W.2d 921, 925 (1950). An attack upon the facial validity of an ordinance, however, is and will continue to be unaffected by any later facts not related to amendment or repeal. No one suggests that the ordinance before this court—either in the three sections mentioned or as a whole—is different in any presently material respect than the one before the state court.

■ Further, the remainder of JBK's present facial invalidity claims, as well as certain other of its present claims, are now barred under that aspect of "traditional" *res judicata* which prohibits a party from asserting, in a second action, any claim arising from the same transaction which gave rise to a claim previously adjudicated on the merits. That doctrine, expressed both in the rule against "splitting" a cause of action, *see Burke v. Doerflinger,* 663 S.W.2d 405, 407 (Mo.Ct.App.1983); and *see generally* RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 24 Comment *a,* § 25, and in the shorthand formula which applies the bar of *res judicata* to claims which "could" have been litigated in the first action, *see, e.g., Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980), is based upon the concept that a "cause of action" is more than a mere theory of recovery, per se; rather it is a composite of all rights flowing from the "transaction" (or series of connected transactions) which give rise to the claim earlier adjudicated. *See* RESTATEMENT (SECOND) OF JUDGMENTS, *supra.* This "transactional" concept of a "cause of action" has been embraced by the Missouri courts in connection with applications of *res judicata. See Grue v. Hensley,* 357 Mo. 592, 210 S.W.2d 7, 10 (1948); *Burke v. Doerflinger,* 663 S.W.2d at 407; *Dreckshage v. Community Federal Savings &*

*Loan,* 641 S.W.2d 831, 833–34 (Mo.Ct.App. 1982).

It is clear that the "transaction" which gave rise to the three facial invalidity claims covered by the parties' second state court stipulation was the enactment of the ordinance itself. As the RESTATEMENT (SECOND) OF JUDGMENTS points out in Comment *c* to § 24,

> In the more complicated case where one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction; a judgment based on the act usually prevents the person from maintaining another action for any of the harms not sued for in the first action.

So it should be here; and I hold, accordingly, that *all* of JBK's claims of facial invalidity, whether asserted or not asserted in the state court action, and whether or not covered by the parties' stipulations there, are now barred by the judgment in that action.[4] I also reach that same conclusion, for the same reasons, with respect to JBK's present "taking" claim (Count II).[5] Since the parties' antitrust claims will be dealt with separately, Part V, *infra,* this leaves at issue only JBK's discriminatory enforcement claims, and assertions of unconstitutionality based upon the application of the ordinance.

■ These remaining claims obviously do not arise out of the enactment of the ordinance itself; rather they arise out of "transactions" subsequent thereto, and thus are not necessarily[6] a part of any "cause of action" based upon enactment of the ordinance. Further, even though discriminatory enforcement claims were *pleaded* in the state court suit, I cannot determine from the present record what result that should produce. It seems clear enough, of course, that the combined effect of the parties' stipulation in that suit, and the court's judgment therein, was to dismiss *all* claims asserted; but it is unclear, with respect to any "cause of action" other than that associated with enactment of the ordinance, whether that dismissal was "with prejudice" or "without prejudice."[7] The former will ordinarily furnish a predicate for the application of *res judicata,* at least as to a later assertion of the same cause against the same opposing party, *Denny v. Mathieu,* 452 S.W.2d 114, 118–19 (Mo.1970) (en banc); Rule 67.03, Missouri Supreme Court Rules; but the latter will not, *Williams v. City Bank,* 566 F.Supp. 827, 829 n. 1 (E.D.Mo.1983), *dismissed* 725 F.2d 689 (8th Cir.1983); *Evans v. Brussel,*

---

**4.** I acknowledge the theoretical—although unlikely—possibility that the parties' unusual method of submitting their earlier controversy to the state court involved an agreement that JBK would be permitted to "split" its claims on that cause of action, reserving for some later forum those not specifically identified in the two stipulations. *See generally* RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 26(1)(a). It would, however, be JBK's burden to establish that fact, and it has offered neither any proof nor even any suggestion that such was the case.

**5.** In the abstract at least, this ruling would extend only to a claim that the "taking" arose from the facial provisions of the ordinance, leaving the possibility of a "taking" which arose in connection with discriminatory enforcement. There is, however, no reason to strain constitutional theory by attempting to predicate a "taking" claim upon the latter basis. As pointed out in Part III hereof, a "taking" claim of any variety would present no more than a pendent state claim for inverse condemnation in any event. Further, if JBK can prove its discriminatory

enforcement claims, it will receive its full measure of damages in a straightforward fashion under § 1983 and the Equal Protection Clause. There is, in these circumstances, no reason to leave pending some theoretical but useless vestiage of its "taking" claim.

**6.** Whether those "transactions" could be considered a "connected series of transactions," see RESTATEMENT (SECOND) OF JUDGMENTS, *supra* § 24, with respect to the enactment of the ordinance is something that cannot be determined upon the present record.

**7.** To put the matter another way, it is unclear whether the parties' stipulations had the effect of "withdrawing" all issues other than those associated with enactment of the ordinance, thereby accomplishing, in effect, a dismissal without prejudice of those other issues. *See generally Hart-Bartlett-Sturtevant Grain Co. v. Aetna Ins. Co.,* 365 Mo. 1134, 293 S.W.2d 913, 929 (1956), *cert. denied,* 352 U.S. 1016, 77 S.Ct. 562, 1 L.Ed.2d 548 (1956); 50 C.J.S. *Judgments* § 729 (1947).

330 S.W.2d 788, 791 (Mo.1960), *cert. denied,* 362 U.S. 919, 80 S.Ct. 673, 4 L.Ed.2d 740 (1960). And in any event, claims founded upon incidents occurring after the state court suit would not be barred even if this question was ultimately answered in defendants' favor. As regards discriminatory enforcement claims and claims that the ordinance has somehow been applied in an unconstitutional manner, defendants' present motion, as predicated upon a *res judicata* argument, must accordingly be denied.

### B.

#### *Individual Plaintiffs*

■ The individual plaintiffs in the present case were not parties to the state court action, although they are—in part[8]—represented by the same attorneys who represented JBK and the individual plaintiff in that action. In fact, although each now apparently wishes to become an employee of JBK, there is no indication that any of the three were so employed at the time of that earlier suit, or even that any of them except Byrne then had any interest in becoming a masseuse. Defendants urge, nonetheless, that their claims are now precluded under the doctrine of "virtual representation."

Defendants rely primarily upon the Missouri Supreme Court's decisions in *Norval v. Whitesell,* 605 S.W.2d 789 (Mo.1980) (en banc), *State ex rel. Fort Zumwalt School Dist. v. Dickherber,* 576 S.W.2d 532 (Mo. 1979) (en banc), and *Siebert v. City of Columbia,* 461 S.W.2d 808 (Mo.1970) (en banc). To that list, for present purposes, might also be added *Drainage Dist. No. 1 Reformed v. Matthews,* 361 Mo. 286, 234 S.W.2d 567 (1950), and *Powell v. City of Joplin,* 335 Mo. 562, 73 S.W.2d 408 (1934). The essence of the argument is captured in the following quote from *Matthews,* 234 S.W.2d at 573:

> In the absence of fraud or collusion a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local governmental agency or district, or a board or officers properly representing it, is binding and conclusive on all residents, citizens and taxpayers in respect to matters adjudicated which are of general public interest such as questions relating to public property, contracts or other obligations....

and in subsequent language from *Siebert,* 461 S.W.2d at 811:

> We are in full accord with the doctrine of virtual representation. It would be unthinkable in our system of jurisprudence to hold that each taxpayer of a municipality could bring a suit to attack an annexation and that res judicata would not apply because there was not an identity of parties. Of necessity, absent fraud or bad faith, all residents and taxpayers must be bound by the result of litigation of a public nature carried out by one in similar circumstances and having a common interest.

At the same time, however, it is clear even under these formulations that the interests of the prior litigant and the present litigant must be "so identical that the inducement and desire to protect the common interest may be assumed to be the same in each and if there can be no adversity of interest between them." *Id.*

The Missouri courts have applied the rule quoted above to an attack upon the validity of a city annexation ordinance, *see e.g., Siebert,* 461 S.W.2d 808; *Powell,* 73 S.W.2d 408; an attack upon the validity of drainage district maintenance warrants, *see Matthews,* 234 S.W.2d 567; and an attack upon the levy and collection of taxes, *Wilson v. Rainey,* 74 Mo. 229 (1881); and *see also Norval,* 605 S.W.2d 789 (validity of schoolboard rule prohibiting loan of free textbooks without cash deposit). I do not find any Missouri case which has actually applied the rule to the litigation of constitutional questions of the present sort, al-

---

8. Plaintiffs are now also represented by an additional attorney who was not present in the state court litigation.

though it has been applied, in some of the above settings, to certain constitutional questions asserted therein. *See Powell,* 73 S.W.2d 408; and *cf. Norval,* 605 S.W.2d 789. I cannot, however, discover any principled basis upon which to distinguish between questions of facial constitutional validity and other matters of "general public interest" to which Missouri courts have applied the rule, and I do not believe the Missouri courts would indulge in such a distinction.

Nevertheless, I believe defendants' present argument must be rejected, except as to one point. First, there is serious doubt that the doctrine of virtual representation ordinarily can or should be applied outside the context of pure issue preclusion—that is, to issues other than those actually determined on the merits in the prior suit. *See Siebert,* 461 S.W.2d 808.[9] If that view is adopted, the present aspect of defendants' motion could be granted only as to the facial validity of §§ 8.8(g), 8.19(b) and (c) and 8.20(c) in any event. Second, and of more importance, the present record (or lack thereof) leaves me less than convinced that there is (except in one respect) the necessary degree of identity of interest between JBK and Beer on the one hand and the present individual plaintiffs on the other, even as concerns the above mentioned sections of the ordinance. While Beer was herself a masseuse, she was also the owner of JBK; and if I am to indulge in assumptions at all, *see Siebert,* 461 S.W.2d 808, I would assume her principal interest and point of view was that of an owner/operator/employer rather than that of a masseuse/employee. Her stake, and focus, in attacking the ordinance provisions that relate to the course of study, the hours of apprenticeship and the content of the examination required to become a masseuse may arguably be different from those of one who in fact seeks to be a masseuse. *Compare Siebert,* 461 S.W.2d 808. At the very least this represents a fact question, *see Crane Boom Life Guard Co. v. Saf-T-Boom Corp.,* 362 F.2d 317, 322 (8th Cir.1966), *cert. denied,* 386 U.S. 908, 87 S.Ct. 853, 17 L.Ed.2d 782 (1967), which, unaided by any presumption, is inappropriate for summary judgment disposition upon the present record.

■ The sole exception I find relates to the argument over the hours of operation section of the ordinance (§ 8.8(g)):[10] an argument specifically presented to the state court, and clearly decided on the merits. As to that isolated subject, I cannot discern any possible practical distinction between the interests which JBK and Beer might have had, and the interests which the present individual plaintiffs might have, save for the fact that the interests of the former, as owners and operators, might have been greater or more direct. On that point, defendants' motion as directed to the present individual plaintiffs will be granted.

## II.

## FACIAL VALIDITY OF THE ORDINANCE

### A.

### *Substantive Due Process and Equal Protection Claims*

Plaintiffs (as the case is now postured for our immediate purpose, the individual plaintiffs) challenge "[t]he means selected by the defendants to regulate the business and occupation of [the] plaintiffs through the enactment of [the ordinance]," as facially violative of the due process (presumably substantive due process) and equal protection guarantees of the Fourteenth Amendment. Although this challenge, as set forth in the complaint, makes no refer-

---

9. The question was squarely presented in *Siebert,* but left unruled. Certain language in the opinion, however, would appear to support limiting the doctrine in this way. There are, in addition, substantial policy reasons for such a limitation.

10. Section 8.8(g) provides that businesses covered by the ordinance shall operate only between the hours of 6:00 a.m. and 12:00 midnight.

ence to any individual ordinance section or subject, plaintiffs' brief on the present motion identifies three matters of specific concern to them: (a) the requirement that an apprentice massagist, before taking the examination to become a licensed massagist, must complete 1000 hours of instruction under a licensed massagist and read and study textbooks as prescribed by the examining authority (now the Director of Liquor and Amusement Control) (§ 8.20(c)); (b) the requirement that a massagist applicant, prior to becoming a licensed massagist, take a written examination on certain subjects specified in the ordinance, (§ 8.19(c)); and (c), the content of the hiring forms specified by the ordinance (§ 8.6). Whether plaintiffs offer this only as a representative sampling, or instead mean to restrict their present argument to these three specific matters, I do not know; but out of an abundance of caution I will for the time being limit my rulings in a corresponding fashion.[11]

█ With respect to these questions of facial validity, it is clear that the ordinance does not implicate any "fundamental" constitutional values or employ any classification based upon "suspect" categories. *See Harper v. Lindsay,* 616 F.2d 849, 854 (5th Cir.1980); *Pollard v. Cockrell,* 578 F.2d 1002, 1012–13 (5th Cir.1978). It is, instead, simply an exercise of the City's police power, directed to a regulation of business or economic interests. *See generally New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). In that context, the test to be applied to either a substantive due process argument or to an equal protection argument is the same, *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 470 n. 12, 101 S.Ct. 715, 727 n. 12, 66 L.Ed.2d 659 (1981): *viz,* whether the regulation (or classification, in the case of an equal protection argument) is "rationally related to a legitimate state interest." *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213–

14, 57 L.Ed.2d 91 (1978) (substantive due process); *New Orleans v. Dukes,* 427 U.S. at 303, 96 S.Ct. at 2516 (equal protection).

Here, the "state interest" upon which the ordinance is grounded is said to be that of protecting the "health, safety, morals and welfare" of the City's residents. *See* Preamble, Chapter 8, Code of General Ordinances of the City of Kansas City, Missouri. Plaintiffs do not suggest—nor could they very well—that this is not, in general, a "legitimate state interest." Thus the issue is narrowed to whether that announced purpose was in fact a goal actually pursued by the City, and if so whether the regulations in question are rationally related to the achievement of that goal.

█ There is a presumption that the objectives articulated by the ordinance are the ones actually pursued. *Clover Leaf Creamery Co.,* 449 U.S. at 463 n. 7, 101 S.Ct. at 723 n. 7; *Weinberger v. Weisenfield,* 420 U.S. 636, 648 n. 16, 95 S.Ct. 1225, 1233 n. 16, 43 L.Ed.2d 514 (1975). That presumption controls, "unless an examination of the circumstances forces ... [the conclusion] that they could not have been a goal of the legislature." *Id.* Further, as the Court stated in *Clover Leaf Creamery Co.,* 449 U.S. at 464, 101 S.Ct. at 724:

> ... States [here, the City] are not required to convince the courts of the correctness of their legislative judgments. Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker."

In fact, legislatures are presumed to have acted constitutionally even if the source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and statutory classifications will be set aside only if no grounds at all can be conceived to justify them. *McDonald v. Board of Election Comm'rs,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22

---

**11.** Plaintiffs will, however, be directed to identify specifically, by ordinance section or subsection, any other provisions they challenge under this theory, within fifteen days of the date of this order, so that all such other matters may be promptly addressed.

L.Ed.2d 739 (1969). Thus the proponent of the legislation need not even establish an express legislative purpose, *Alabama State Federation of Teachers, AFL–CIO v. James,* 656 F.2d 193, 195 (5th Cir.1981), or produce any empirical evidence upon which it, or the selection of implementing means, is based. *See Vance v. Bradley,* 440 U.S. 93, 110–11, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979).

■ The result is to create—with respect to legislation of the present sort—a straightforward presumption of constitutional validity. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); *Wermager v. Cormorant Tp. Bd.,* 716 F.2d 1211, 1215 (8th Cir.1983); *Fitz v. Dolyak,* 712 F.2d 330, 333 (8th Cir.1983). That presumption is rebuttable, *Wermager,* 716 F.2d at 1215, but it is entitled to as much force and effect under summary judgment procedures as elsewhere. *Id.* Accordingly, when a question involving the facial constitutional validity of such legislation is reached on a motion for summary judgment, if the party asserting the invalidity of the legislation fails to offer evidence of a substantial character (or at least an argument based upon compelling logic) which rebuts the presumption, or to excuse that failure in accordance with Rule 56(f), the motion should be granted. *Id.*

■ Here, the evidence submitted by plaintiffs—insofar as it addresses the present questions at all—falls far short of meeting the standards referred to above. That evidence consists of the affidavits of the prior owner of JBK and three applicant massagists,[12] undertaking to suggest that the affiants believe the examination was difficult and covered subjects which were irrelevant to the practice of "recreational massage." Rather obviously, there is nothing in this—or in any argument that plaintiffs make—which "forces the conclusion"

that the announced legislative goal of "protect[ing] the health and safety of the citizens of Kansas City, Missouri" was not in fact an objective actually pursued; instead, it amounts at best to a conclusory attack upon the legislative judgments involved in selecting the means to achieve that objective. Nor is there anything in the evidence plaintiffs present—or in any argument they make—which even approaches the high threshold barrier they must cross in overcoming the presumed validity of those legislative selections. To the contrary, it is at least plausible that the health and safety of persons whose bodies are subjected to (among other things) "kneading," "rubbing," "tapping," or "pounding," see Ordinance § 8.1(c) (in part, the definition of "massage"), may indeed be at risk if those commercially administering such things are not required to have some level of skill, competence and training. When that much is conceded, as I believe it must be, it requires little imagination to find a rational relationship between the problem and the specific requirements of the ordinance relating to hours of instruction, a course of study, and the general scope and substance of the examination. Whether this court might have selected other means (*e.g.,* whether 250, or 500, or 750 hours of instruction as an apprentice would be better or more rational) is not the question; it is enough to say that the requirements the City did select are within the bounds of apparent reason given the objective at hand. As the Supreme Court pointed out in *Ferguson v. Skrupa,* 372 U.S. 726, 731, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963), and reiterated more recently in *Exxon Corp.,* 437 U.S. at 124, 98 S.Ct. at 2213, the Due Process Clause (and by the same token in the present sort of case, the Equal Protection Clause) does not empower the judiciary "to sit as a superlegislature to weigh the wisdom of legislation."

---

**12.** Plaintiffs have also attached a copy of one of the examinations actually given. I do not decide here whether that examination might be subject to any of the arguments plaintiffs make: such a matter represents an *application* of the ordinance (which, itself, specifies only general

subjects for the examination); and given the fact that there were apparently a number of different examinations given at different times, I believe the subject is better left to future resolution upon a more developed record.

I have not overlooked, in this analysis, plaintiffs' suggestion that "recreational massage"[13] should require less in the way of instruction, study and examination than other types of massage. To the extent this represents an assertion that plaintiffs should be allowed to practice so-called "genital massage" without benefit of the study and examination required of other massagists, they of course have no room to complain: that form of "massage" is illegal both under the ordinance (§ 8.12(b)) and under a valid Missouri statute, *see* Mo.Rev. Stat. § 567.010(2); and *cf. J.B.K., Inc. v. Caron*, 600 F.2d 710 (8th Cir.1979). To the extent they suggest that "recreational massage" represents some other recognizable subcategory of activity which falls within the definition of "massage" as supplied by the ordinance, the short answer is again that the Equal Protection Clause—for plaintiffs' argument at this point becomes a pure equal protection matter—requires (for the present kind of legislation) only a "rational relationship" between the legitimate purposes of the ordinance and the classification employed. For the same reasons expressed previously, plaintiffs fall far short of demonstrating the absence of such a relationship here. In fact, even if the City might theoretically have attempted to define "recreational massage" and to distinguish between that and other forms or "schools" of massage, its failure to do so is hardly fatal. Even if a statutory classification of this sort is to some extent over-inclusive, perfection is by no means required in terms of a rational relationship analysis; legislation will not be found unconstitutional simply because the classification it makes is not undertaken with mathematical nicety. *Vance*, 440 U.S. at 108–09, 99 S.Ct. at 948–49; *and compare England v. Louisiana State Bd. of Medical Examiners*, 246 F.Supp. 993 (E.D.La.1965) (three judge court), *aff'd per curiam*, 384 U.S. 885, 86 S.Ct. 1924, 16 L.Ed.2d 998 (1966). Such

imperfections are accepted because they are "in turn rationally related to the secondary objective of legislative convenience." *Vance*, 440 U.S. at 109, 99 S.Ct. at 948.

This does, however, tend to bring into focus the other feature of the City's announced legislative purpose in adopting the ordinance—that of controlling illegal commercial sexual activity; and in turn allows a disposition of the other subject of alleged facial invalidity: the hiring form and the information required thereby (§ 8.6). As the preamble to the ordinance demonstrates, the City has reached a legislative judgment that

> massage shops, ... when unregulated and engaged in or controlled by persons of bad moral character or who are prone to criminal conduct, offer potential harm to the morals, safety and welfare of the citizens....

Plaintiffs offer nothing at all to demonstrate or suggest that this was a judgment the City Council could not rationally have made. With that predicate in mind, there is no difficulty finding a "rational relationship" between the problem identified and the means chosen to combat it as expressed in the ordinance provision in question. Each of the items of information required by the "intent to hire" form is clearly relevant for purposes of identifying the employee and determining both the extent of his or her criminal background and the state of his or her health—all subjects which are material to the problem the City has identified and has undertaken to regulate.

Given all the above, defendants' motion for summary judgment with respect to the individual plaintiffs' claims that Ordinance §§ 8.6, 8.19(c) and 8.20(c) are facially invalid as violative of the Due Process Clause

---

**13.** The only definition of "recreational massage" contained in any of plaintiffs' affidavits is that offered by J. Diane Byrne, and is singularly unhelpful: "[r]ecreational massages are traditional types of massages given in private relax-

ing surroundings. Those ... practicing recreational massage, do not treat illness or injury nor do they perform physical therapy or hydrotherapy for the treatment of illness or injury."

906

and Equal Protection Clause of the Fourteenth Amendment will be granted.[14]

## B.
### Overbreadth

Coupled with their Due Process and Equal Protection claims, plaintiffs assert that the ordinance is facially invalid as being "overbroad and susceptible of application to entirely innocent activity in violation of their First Amendment rights."

 As ordinarily applied, the "overbreadth" doctrine is a creature peculiar to First Amendment claims. The traditional rule governing constitutional adjudication is that a person to whom a statute may constitutionally be applied will not be heard to challenge the facial validity of that statute on the ground that it may also conceivably be taken as applying to other persons or to other situations in which the application might be unconstitutional. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610–11, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830 (1973); *United States v. Raines*, 362 U.S. 17, 20–22, 80 S.Ct. 519, 522–23, 4 L.Ed.2d 524 (1960). An exception is made when First Amendment rights are at stake. *Broadrick*, 413 U.S. at 611–12, 93 S.Ct. at 2915–16. That exception is rather closely circumscribed, however, and its scope of application narrows as the behavior to which the statute is directed moves from pure "speech" towards conduct. As the Court stated in *Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917:

> But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behav-

ior that it forbids the State to sanction moves from 'pure speech' towards conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. *Alderman v. United States*, 394 U.S. 165, 174–175, 89 S.Ct. 961 [966–967], 22 L.Ed.2d 176 (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

 Part of the difficulty with the present claim is in identifying any legitimate First Amendment right that might be impermissibly implicated by the ordinance sections presently in question, *see generally J.B.K., Inc. v. Caron*, 600 F.2d 710 (8th Cir.1979); a difficulty somewhat compounded by plaintiffs' complete failure to address the issue in their brief. There in fact is nothing in those sections which would appear to impact the communication of ideas —"speech"—at all; nor is there anything which might more than incidentally involve a right to association or privacy. In any event, the ordinance is, both in form and substance, a measure regulating businesses and conduct, not speech, and as such

**14.** I note plaintiffs' citations to *Myrick v. Board of Pierce City Comm'rs*, 102 Wash.2d 698, 677 P.2d 140 (1984), and *Pentco, Inc. v. Moody*, 474 F.Supp. 1001 (S.D.Ohio 1978). In the former case, the Washington Supreme Court's holdings appear to be premised solely upon its construction of the Washington state constitution. A state is quite free, of course, to construe its own constitutional provisions as it sees fit; but I have no obligation to give such rulings any particular weight in dealing with provisions—even counterpart provisions—of the Federal Constitution. As to the latter case, I can say only—although with respect—that I believe it accords considerably less deference to legislative decisions of the present sort than is mandated by current Supreme Court constructions of the Due Process Clause and Equal Protection Clause.

any overbreadth claim relating to the sections mentioned is subject to the limitation laid down in *Broadrick*. When reviewed in that light, defendants' motion must be granted, for I am unable to discern any "real"—much less "substantial"—imposition upon First Amendment freedoms beyond the legitimate, specific sweep of those sections.

## C.

### *Vagueness*

■ Plaintiffs also complain that portions of the ordinance are unduly vague, and should be invalidated for that reason. Plaintiffs cite, "by way of illustration," §§ 8.18, 8.19 and 8.20. Section 8.18 describes how one obtains a massagist permit; § 8.19 creates the now defunct Board of Massage Examiners, defines its duties, and prescribes the general content of the examination required to obtain a massagist permit; while § 8.20 establishes the requirements applicable to apprentices.

Under *Papachristou v. City of Jacksonville*, 405 U.S. 156, 161, 92 S.Ct. 839, 842, 31 L.Ed.2d 110 (1972), an ordinance will be void for vagueness if it fails to give a person of ordinary intelligence fair notice of offending conduct, or if it encourages arbitrary and erratic arrests and convictions. I find no such problem here. Presumably—since plaintiffs have chosen to cite them "by way of illustration"—§§ 8.18, 8.19 and 8.20 are considered to be among the more vague provisions of the ordinance, and yet I find the language of each straightforward and easily understood. In fact, the ordinance as a whole is noteworthy for the exhaustive detail which permeates every provi-

sion. Plaintiffs fail even to suggest, much less to demonstrate, how any provision of the ordinance is unclear, confusing or vague. Defendants' motion with respect to these claims will be granted.

## D.

### *Reciprocity*

■ In their brief at least, plaintiffs further suggest that the failure to grant reciprocity to massagists licensed in other jurisdictions violates the Privileges and Immunities Clause of article IV § 2 of the United States Constitution. They base their argument on *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985). Because the argument is easily disposed of, I will address it on the merits and overlook the standing question it presents.[15]

In *Piper*, the plaintiff had passed the New Hampshire bar examination, but was denied admission to the bar because she lived in Vermont, 400 yards from the New Hampshire border. The Court noted that the privileges and immunities clause "was intended to create a national economic union," 105 S.Ct. at 1276, 84 L.Ed.2d at 210, and therefore that states may not discriminate between residents and nonresidents when the enterprise is fundamental "to the promotion of interstate harmony." *Id.* at 1276, 84 L.Ed.2d at 210. The essence of the holding is that a state may not, without substantial justification, distinguish between nonresidents and residents in connection with the right to earn a livelihood within the state.

---

**15.** As nearly as I can determine, the theory of the claim is that if one has been issued a massagist license by the *county* (here, presumably, Jackson County), it is a violation of § 2 of article IV if the *city* fails to "grant reciprocity." If so, the claim obviously does not involve a discriminatory treatment of the residents of some other state by the State of Missouri, or even by the City; rather it implicates relations between two subordinate governmental units of the same state, and the treatment accorded to persons who are residents of the same state.

Article IV, § 2 has no application to that situation. *United Bldg. & Constr. Trades v. Mayor*, 465 U.S. 208, 217, 104 S.Ct. 1020, 1027, 79 L.Ed.2d 249 (1984); *Slaughter-House Cases*, 16 Wall. 36, 77, 83 U.S. 36, 77, 21 L.Ed. 394 (1873). Accordingly, the only persons having standing to assert a "reciprocity" argument of the nature made here would be massagists licensed and residing in some state other than Missouri. There is no indication that any of the present plaintiffs are thus situated.

The point plaintiffs miss is that discrimination under the Privileges and Immunities Clause of Article IV exists when residents and nonresidents are treated in different ways, not when they are treated in the same way. Here, plaintiffs argue not for similar treatment, but for differential treatment; i.e., that a person with a massagist's license from another jurisdiction should be *excused* from taking the examination residents must take. This is not the holding in *Piper,* and in fact runs counter to other Supreme Court decisions. *See Leis v. Flynt,* 439 U.S. 438, 443, 99 S.Ct. 698, 701, 58 L.Ed.2d 717 (1979) ("the Constitution does not require that because a lawyer has been admitted to the bar of one State, he or she must be allowed to practice in another"); and *see also Attwell v. Nichols,* 608 F.2d 228 (5th Cir.1979), *cert. denied,* 446 U.S. 955, 100 S.Ct. 2924, 64 L.Ed.2d 813 (1980). Plaintiffs misunderstand the problem the Privileges and Immunities Clause is designed to correct, and consequently their claim, to the extent that it seeks to implicate the Clause, lacks merit.

### E.

#### Procedural Due Process

Plaintiffs also raise a due process challenge to the appeals mechanism contained in the ordinance. Plaintiffs do not allege that they have ever attempted to utilize that appeals process, or have ever been caused any injury thereby, but simply that a board comprised of "competitors" cannot "provide them with adequate due process when appealing adverse decisions."

The City Council eliminated the Board of Massage Examiners on May 22, 1985, and vested its authority in the Director of Liquor and Amusement Control. As the Supreme Court stated in *United States v. Alaska Steamship Co.,* 253 U.S. 113, 116, 40 S.Ct. 448, 448, 64 L.Ed. 808 (1920), a case becomes moot when, "by an act of the parties, or a subsequent law, the existing controversy has come to an end." In those situations, a court is not empowered "to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." *Id.* I believe all would have to agree that the instant controversy, if one ever seriously existed, is in fact now moot. Defendants' motion with respect to plaintiffs' facial procedural due process claims will be granted.

### III.

### THE "TAKING" CLAIM

As noted, JBK's asserted "taking" claim (that the ordinance provisions represent such a regulation of its property and its uses of that property as to amount to a taking thereof by the City) is barred by virtue of the claims preclusion resulting from the earlier state court action. Even if that were not so, however, the claim would face difficulties, as the individual plaintiffs' similar claims in fact do.

To begin with, there is—contrary to plaintiffs' apparent idea—nothing unconstitutional as such in a "taking" by a governmental entity, even if no compensation is paid at or before the time of the taking. *Williamson Planning Comm'n v. Hamilton Bank,* — U.S. —, 105 S.Ct. 3108, 87 L.Ed.2d 126, 143–44 (1985); *Nika Corp. v. City of Kansas City,* 582 F.Supp. 343, 362–64 (W.D.Mo.1983). All that is required is that there be a reasonable, certain and adequate provision for obtaining compensation. *Williamson Planning Comm'n,* 105 S.Ct. at 3121, 87 L.Ed.2d at 144. That requirement is satisfied if, in the case of a state or subordinate entity taking, the state provides an adequate method for obtaining compensation, as by way of an inverse condemnation action or other action, and if resort to that process yields just compensation. *Id.* Accordingly, any assertion of a § 1983 cause of action in connection with a state "taking," without first resorting to those state procedures, will be at least premature. *Id.* Since Missouri courts have long recognized the theory of inverse condemnation, and have allowed a cause of action for it, *see generally Nika Corp.,* 582 F.Supp. at 364,

and cases cited therein, the "taking" claim here could thus represent, at best, only a pendent state claim.

There is, further, a difficulty with the concept of a "taking" as applied to this case. Even with respect to JBK, which is the only plaintiff with any apparent "property" involved, it is difficult to conceive that the ordinance would eliminate *all* reasonable beneficial use of that property—the level of interference required for there to be a money damages "taking" by way of police power regulation, if in fact such a claim can arise at all from police power regulation, *see Williamson Planning Comm'n*, 105 S.Ct. at 3116, 87 L.Ed.2d at 138. As to the individual plaintiffs, however, neither the complaint, their briefing nor my imagination serves to suggest what "property" they may have at stake. The concept of "property" for eminent domain "taking" purposes is indeed broad, encompassing not only physical things but also intangibles such as rights associated with physical property, choses in action, contract rights and so forth. *See generally* 2 Nichols, *The Law of Eminent Domain* §§ 5.01–5.51 (1985). I am, however, unable to accept the apparent theory that the individual plaintiffs' mere *desire* to become masseuses, or to practice "recreational massage," is "property" which can be the subject of a "taking" claim. Defendants' motion with respect to those claims will accordingly be granted.

### IV.

### DISCRIMINATORY ENFORCEMENT

Contained within the plethora of constitutional deprivations alleged by plaintiffs are assertions—completely unspecific, to be sure—that the "administration and enforcement" of the ordinance have operated to deprive them of their due process and equal protection rights. Extending to plaintiffs the benefit of the doubt for present purposes, I take these assertions as alleging claims of discrimination in the enforcement of the ordinance, or of other constitutional violations arising from the actual application of the ordinance, apart from what it requires on its face.

As noted, claims of this nature, even by JBK and even with respect to acts or incidents which were or could have been put in issue by the petition in the state court suit, will—at least for the time being—survive defendants' *res judicata* defense. By the same token, of course, claims by JBK based upon acts or incidents occurring after the state court suit, and claims of this nature by the individual plaintiffs based upon acts or incidents occurring at any time, will be unaffected by *res judicata.*

Defendants have offered nothing in support of their present motion that goes to the merits of any of these potential claims, except for an argument that each of the individual defendants has immunity from any claim for money damages "because they acted in good faith in the enforcement of [the ordinance]." Defendants' apparent theory is that the judgment in the state court suit, establishing the facial validity of at least parts (if not all) of the ordinance, somehow operates to establish their "good faith" in all of their subsequent actions taken under it.

The flaw in the argument is perhaps apparent. There is obviously nothing in the state court judgment which serves, by itself, to establish the defendants' "good faith" with respect to any and all actions they may have taken under the ordinance. It may well be that a defendant who did nothing more than follow the facial commands of the ordinance in a non-discriminatory fashion would have such a defense; but plaintiffs' apparent claims of discriminatory enforcement would necessarily put more in issue than that. In the latter context, a defendant's "good faith" is of course a fact question, which cannot be resolved on the present record. Defendants' motion as to these claims will be denied.

### V.

### ANTITRUST CLAIMS

Plaintiffs' antitrust claims are premised expressly, and solely, upon Missouri state

statutes covering that subject. *See generally* Mo.Rev.Stat. §§ 416.011 to 416.161, inclusive. As best I can determine from the complaint, three general theories are involved: (a) that the ordinance, on its face, in some way restrains trade in an antitrust sense; (b) that the original appointment of defendant O'Brien and the other members of the now defunct Board of Massage Examiners was the result of a conspiracy between those persons, the City "and others," the alleged object of which was to prevent plaintiffs from continuing in the business of "recreational massage" and to create a monopoly in that business in favor of (apparently) the members of the Board of Massage Examiners and the American Massage and Therapy Association (AMTA); and (c), that the "conspiracy" identified above, and its effects, continue to date, presumably through acts subsequent to the adoption of the ordinance and the original appointments to the Board of Massage Examiners.

Defendants advance a number of reasons why these claims should be dismissed. I find it necessary to consider only one of them.

The claims at issue are of course asserted as pendent state claims, there being no diversity jurisdiction present. Whether they should be entertained here, even if I make the somewhat questionable assumption that both they and the federal claims asserted arise "from a common nucleus of operative fact," *see United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), is a matter committed to the court's discretion. *Id.* Among other things to be weighed in that connection is the presence of a difficult question of state law, which on balance would be better left to decision by the state courts. *Id.*; and *see also Moor v. County of Alameda,* 411 U.S. 693, 715–17, 93 S.Ct. 1785, 1798–1800, 36 L.Ed.2d 596 (1973); *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 775–78 (D.C.Cir.1982). It is the existence of just such a question—not only difficult, but involving highly sensitive interests peculiar to the state, which go to the core of its relationship with its

subordinate governmental entities—that counsels against exercising pendent jurisdiction here. That question is whether the City, and those acting on its behalf, are to be exempted from the reach of the state's antitrust statutes, or are to enjoy immunity therefrom, and if not, then upon what basis and to what extent liability is to be imposed.

▆ It is true, as plaintiffs note, that Mo.Rev.Stat. § 416.141 specifies that the state's antitrust statutes "shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes;" and also true that under federal antitrust law municipalities and other subordinate state governmental units do not share equally in a state's ability to avoid federal antitrust restrictions. *See generally Hallie v. Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985); *Southern Motor Carriers Rate Conf. v. U.S.,* 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985); *Community Communications Co. v. Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982); *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); Annot., 70 L.Ed.2d 973 (1983). Instead, municipal activities fall within the state-action "exemption" only when those activities are authorized by the state pursuant to a state policy to displace competition with regulation or monopoly service, although the activities need not be compelled by the state. *Hallie,* 105 S.Ct. at 1717, 1719–21, 85 L.Ed.2d at 30, 33–34. It is by no means clear to me, however, that § 416.141 would or could be construed by the Missouri courts as incorporating those same concepts into the *state's* antitrust laws; and in fact a strong argument to the contrary can be made.

▆ To begin with, I note that § 416.-141 requires only that the Missouri antitrust statutes be construed "in harmony with" the ruling interpretations of the federal antitrust laws, not that all incidents of the latter inevitably, and despite differing policy considerations, be transported bodily

into the former. In that connection, it is not unfair to observe that the Supreme Court's development of the law on this particular subject—a development which has been attended by vigorous controversy within the Court itself, *see, e.g., Lafayette,* 435 U.S. at 418–26, 98 S.Ct. at 1139–43, 1143–52 (Chief Justice Burger concurring in plurality opinion), 426–43 (Justices Stewart, White, Blackmun and Rehnquist dissenting); *Community Communications Co.,* 455 U.S. at 60–71, 102 S.Ct. at 845–51 (Justice Rehnquist dissenting, joined by Chief Justice Burger and Justice O'Connor) —began only in 1978, some four years after § 416.141 was enacted by the Missouri state legislature. How the General Assembly might have phrased § 416.141 if writing against a backdrop of present federal law on the subject, I do not know; but I think it safe to say it might have paused more than briefly over the matter. In particular, it seems clear that at least some of the potential problems envisioned by Justice Rehnquist in his dissent in *Boulder* would have been of deep concern, going as they would to the very heart of the state's relationship with its own political subdivisions (particularly constitutional charter cities), its method of delegating police power and other authority to those subdivisions, and the ability of those subdivisions to exercise such authority. In short, the considerations to be taken into account by a Missouri court faced with construing § 416.141 in connection with the present question are rather different, or at least arguably so, from those which motivated the Supreme Court's development of the federal law on this subject.

Second, plaintiffs' attempt to impose liability against the City under the state's antitrust statutes would appear to run headlong into Mo.Rev.Stat. § 537.600 (the 1978 state statute which re-established sovereign immunity for the state and its political subdivisions, including cities, to the extent such immunity "existed at common law in the state prior to September 12, 1977...."), as well as the state's earlier common law doctrine of sovereign immunity. Without attempting to sketch the en-

tire background and scope of that immunity, *see generally Bartley v. Special School Dist. of St. Louis City,* 649 S.W.2d 864 (Mo.1983) (en banc), I note simply that the City's actions which are at issue here obviously represent an exercise of its generally immunized "governmental" powers rather than its non-immunized "proprietary powers," *see generally Central Nat'l Ins. Co. v. City of Kansas City,* 546 F.Supp. 1237, 1241 (W.D.Mo.1982); *Counts v. Morrison-Knudsen,* 663 S.W.2d 357, 362 (Mo.Ct.App. 1983); that there is no suggestion, much less any pleading, that the City has waived that immunity under Mo.Rev.Stat. § 71.-185, by the purchase of insurance which would cover the present claims; that no court decision has ever applied the Missouri antitrust statutes to a municipality, found a lack of sovereign immunity in that connection, or held that § 416.141 abrogates that immunity; and that while § 537.600 expressly avoids "recreating" sovereign immunity where such immunity had been "waived, abrogated or modified by statutes in effect prior to [September 12, 1977]," this at best simply poses a question as to whether § 416.141 was intended to have or even could have that effect.

I do not attempt to answer the ultimate question posed. It is enough to note its existence and its difficulty, to point out that the Missouri case law lends no help, and to observe that it is of particularized and peculiar interest to the state and the state courts. For all the reasons stated in *Financial General Bankshares, Inc.,* 680 F.2d 768, it is a problem in which a federal court, acting only under its pendent jurisdiction, ought not to meddle absent a compelling need to do so.

Consideration of the other factors involved in this connection convinces me there is no such need here. First, although Mo.Rev.Stat. § 516.300 makes the one year refiling period generally allowed by § 516.-230 inapplicable to the instant claims, since the state antitrust statutes contain their own, internal limitations provision (four years), *see* Mo.Rev.Stat. § 416.131.2; and *see and compare Rose v. Arkansas Valley*

*Environ. & Utility Auth.,* 562 F.Supp. 1180, 1198 (W.D.Mo.1983), I do not believe this court's dismissal of the claim need engender any statute of limitations problem, since I will condition that dismissal upon defendants' waiver of any statute of limitations defense to the extent the same involves the period of time the cause has been pending in this court. *See Financial General Bankshares, Inc.,* 680 F.2d at 778. Second, if there are fact issues involved in the claim which overlap issues this court must consider under plaintiffs' remaining discriminatory enforcement claims, there is no reason issue preclusion cannot be applied by the state court. And finally, although the parties have completed discovery in this case, that discovery appears to have been primarily (if not entirely) between the parties themselves, and as such can be effectively utilized in the state court on an admissions basis even without the benefit of an order of this court in that connection; although if any plaintiff feels the need, I will consider an order which makes the dismissal of the claim conditional upon defendants' agreement that relevant discovery herein may be used in any subsequent state court action on the claim.

## VI.

### ORDERS

For the foregoing reasons, it is

ORDERED that defendants' motion for summary judgment, with respect to the following of plaintiffs' claims, should be and is hereby granted, and such claims should be and are hereby dismissed, with prejudice:

1. All claims by plaintiff JBK which assert the facial unconstitutionality of any portion or portions of the ordinance in question;

2. The claims of plaintiffs King, Fithen and Byrne which assert the facial unconstitutionality of §§ 8.6, 8.8(g), 8.19(c), 8.20(c), as well as such plaintiffs' claims under Count I ("overbreadth" and "vagueness"); and

3. All the claims by all plaintiffs which are asserted under Count II ("taking"), as well as those which invoke Article IV., § 2, of the United States Constitution; and it is further

ORDERED that if defendants, within fifteen (15) days of the date of this Order, file with the court a properly executed document in which each defendant agrees to waive, in any subsequently filed state court action involving the same state antitrust causes of action at issue in this case, any statute of limitations claim or defense to the extent (but only to the extent) that the same involves the period of time this case has been pending in this court, then all of plaintiffs' claims which assert violations of the antitrust laws of the State of Missouri (Count VI) shall be dismissed without prejudice; and it is further

ORDERED that all claims by all plaintiffs which assert a lack of procedural due process in those provisions of the ordinance which, prior to May 22, 1985, provided for an appeals process involving the "Board of Massage Examiners," should be, and are hereby, dismissed as moot; and it is further

ORDERED that plaintiffs King, Fithen and Byrne shall, within fifteen (15) days of the date of this Order, file with the court and serve upon opposing counsel a designation, by section or subsection, of each specific portion of the ordinance, if any, other than those already dealt with in this Order, which said plaintiffs claim are facially violative of any provision of the Federal Constitution; stating, for each section or subsection so designated the specific constitutional provision or provisions which are claimed to be violated thereby; and it is further

ORDERED that a ruling of defendants' present summary judgment motion as related to any claims of facial unconstitutionality which may be made pursuant to the immediate preceding section of this Order shall be withheld pending the designation of any such claim and the court's discussion with the parties of the most appropri-

ate method for dealing with the same; and it is further

ORDERED that defendants' said motion, other than as granted hereinabove and other than as held in abeyance under the immediate preceding section of this Order, is hereby denied.