Martha CLAMPITT d/b/a Tender
Touch, Plaintiff,

v.

CITY OF FORT WAYNE, Defendant.

Civ. No. F 87–115.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 21, 1988.

402

Donald C. Swanson, Jr., Swanson & Campbell, Fort Wayne, Ind., for plaintiff.

J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, Ind., for defendant.

### ORDER

WILLIAM C. LEE, District Judge.

This case presents a facial challenge to the constitutionality of various provisions of Fort Wayne's amended nude modeling and massage parlor ordinance. On August 21, 1987, the court dismissed a number of claims in the plaintiff's complaint. Equal protection, procedural due process, and vagueness claims remain and are the subject of the defendant's present motion for summary judgment. The motion is fully briefed and ripe for ruling, and for the following reasons, will be granted.

### I.

#### *Summary Judgment Standards*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *Valentine v. Joliet Tp. High*

*School Dist. No. 204,* 802 F.2d 981, 986 (7th Cir.1986).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 106 S.Ct. at 2511.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 106 S.Ct. at 2512.

### II.

#### *Factual Background*

Plaintiff Martha Clampitt operates Tender Touch, a massage establishment lo-

cated in Fort Wayne, Indiana. Plaintiff is a professional masseuse. Plaintiff is challenging the constitutionality of various provisions of Fort Wayne's new massage parlor and nude modeling ordinance, Special Ordinance No. S–46–87. The challenged ordinance supersedes the old ordinance, which also applied to Clampitt's business.

The new ordinance is allegedly more onerous than the old. Both the old and new ordinances are licensing ordinances. To obtain a license under the new ordinance, an application must be filed with the City, accompanied by a $500 annual licensing fee. The application must include a variety of information, including information about employees. Licenses may be denied, revoked, or suspended for a variety of reasons listed in the ordinance. For those establishments which are licensed, the ordinance contains a number of operating requirements and provides for inspections. These are the basic facts; other facts will be explained in more detail as they come up in the analysis.

### III.

### *Analysis*
### A.

### *Equal Protection*

■ "The Equal Protection Clause ... commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 3254, 87 L.Ed. 2d 313 (1985). Courts have devised standards to determine the validity of legislation or other official action that is challenged as denying equal protection. *Id.* Generally, legislation is presumed valid and will be sustained if the classification drawn by the legislation is "rationally related to a legitimate state interest." *Id. See also Pennell v. City of San Jose*, —— U.S. ——, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 (1988); *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *Vaden v. Village of Maywood, Illinois*, 809 F.2d 361,

365 (7th Cir.1987). And when social legislation is at issue, the Equal Protection Clause allows wide latitude. *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980).

■ The Constitution presumes that even improvident decisions will eventually be rectified by the democratic process. *City of Cleburne*, 105 S.Ct. at 3254. "There is a presumption that the objectives articulated by the legislature are the ones actually pursued." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n. 7, 101 S.Ct. 715, 723 n. 7, 66 L.Ed.2d 659 (1981); *J.B.K., Inc. v. City of Kansas City, Mo.*, 641 F.Supp. 893, 903 (W.D.Mo.1986). That presumption controls unless an examination of the circumstances forces the conclusion that the articulated objectives could not have been a goal of the legislature. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 n. 16, 95 S.Ct. 1225, 1233 n. 16, 43 L.Ed.2d 514 (1975). In fact, legislatures are presumed to have acted constitutionally even if the source materials normally resorted to for ascertaining their grounds for action are otherwise silent; statutory classifications will be set aside only if no grounds at all can be conceived to justify them. *McDonald v. Bd. of Election Commissioners*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969). Thus, the proponent of legislation does not have to establish an express legislative purpose or produce any empirical evidence upon which the legislation is based. *See Vance v. Bradley*, 440 U.S. 93, 110–11, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

■ The ordinance in this case creates no suspect class and affects no fundamental rights. *See, e.g., City of Cleburne*, 105 S.Ct. at 3255; *Pollard v. Cockrell*, 578 F.2d 1002, 1012–13 (5th Cir.1978); *J.B.K., Inc.*, 641 F.Supp. at 903. Since the ordinance is not subject to strict scrutiny, the plaintiff must show (or at least present a genuine issue of material fact) that no set of facts could have reasonably been conceived to establish a rational basis for any classifications drawn by the ordinance. *Chicago Board of Realtors, Inc. v. City of*

*Chicago,* 819 F.2d 732, 740 (7th Cir.1987) citing *Fritz,* 449 U.S. at 179, 101 S.Ct. at 461. The constitutionality of the ordinance will ultimately be upheld unless the plaintiff can rebut the presumption and show that the challenged provisions are not rationally related to a legitimate state interest.

The plaintiff's brief in opposition to the defendant's motion for summary judgment suggests (albeit in a rather roundabout way) that cases involving the constitutionality of an ordinance are rarely appropriate for disposition by way of summary judgment. It is true that summary judgment may not be granted, in this as in any other case, if genuine issues of material fact exist. But the presumption of constitutional validity which applies in this case is entitled to as much force and effect under summary judgment procedures as elsewhere. *Wermager v. Cormorant Twp. Bd.,* 716 F.2d 1211, 1214 (8th Cir.1983); *J.B.K., Inc.,* 641 F.Supp. at 904. "Accordingly, when a question involving the facial constitutional validity of such legislation is reached on a motion for summary judgment, if the party asserting the invalidity of the legislation fails to offer evidence of a substantial character (or at least an argument based upon compelling logic) which rebuts the presumption, or to excuse that failure in accordance with Rule 56(f), the motion should be granted." *J.B.K., Inc.,* 641 F.Supp. at 904, citing *Wermager,* 716 F.2d at 1214–15.

The evidence in opposition to the defendant's motion for summary judgment in this case consists only of Martha Clampitt's affidavit. The court notes that neither the complaint nor the brief in opposition to the motion for summary judgment outlines the provisions of the ordinance which are claimed to violate the Equal Protection Clause. And Clampitt's affidavit, as the

subsequent analysis will show, does not create any genuine issues of material fact, which preclude the court from granting the defendant's motion for summary judgment on the equal protection claim.

■■■ Paragraphs 6 and 18 of Clampitt's affidavit state that the annual $500 non-refundable licensing fee works an undue hardship on Tender Touch and is five times greater than the old licensing fee. Taken most broadly, the plaintiff might be complaining simply that her massage parlor is subjected to a fee, while other businesses, which are not covered by the ordinance, are not. But licensing massage parlors and requiring them to pay licensing fees does not violate the Equal Protection Clause. *See, e.g., Pollard,* 578 F.2d at 1012–13; *J.B.K., Inc.,* 641 F.Supp. at 902–06. The City's purpose for licensing massage parlors and nude modeling studios is presumed to be constitutional. *Vance,* 440 U.S. at 110–11, 99 S.Ct. at 949–50. But the presumption in this case is not needed. The City Council proceedings make it clear that massage parlors and nude modeling studios were singled out in the licensing ordinance because the City Council was concerned about illegal sexual conduct and community health issues.[1] There can be no doubt that the decision to license massage parlors and nude modeling studios, in a general sense, is constitutional and is supported in this case both by the presumption of constitutionality and by the City Council's express legislative intent.

■■■ To the extent that the constitutionality of the licensing fee of $500 is being challenged because the fee is too high, there can be no doubt that the fee is a valid exercise of legislative authority. Licensing fees in similar ordinances, these which are intended to defray the cost of administering the ordinance, have been held constitu-

1. A properly authenticated video tape of the City Council proceedings was submitted in support of the defendant's motion for summary judgment under Cause No. F 87–106. The tape was authenticated by the affidavit of Gerard McClish, which was filed in this case and in F 87–106 and F 87–114, similar cases challenging the constitutionality of the ordinance. Exhibits like this that have been made part of an affidavit may be considered. *See* Wright, Miller and Kane, *Federal Practice and Procedure:* Civil 2d § 2722, pp. 56–58 (2d ed. 1983). The court reviewed the tape in its entirety. The City Council repeatedly expresses its concern for the health of the community. One of the purposes of the ordinance is to reduce the possibility of the spread of contagious diseases.

tional. *See, e.g., Harper v. Lindsay,* 616 F.2d 849 (5th Cir.1980); *Stansberry v. Holmes,* 613 F.2d 1285 (5th Cir.1980); *Broadway Books, Inc. v. Roberts,* 642 F.Supp. 486, 493 (E.D.Tenn.1986) (upholding $500 fee as reasonable to defray costs of investigation). The plaintiff in this case has certainly not shown that no set of facts could reasonably be conceived to establish a rational basis for the $500 annual fee. On the contrary, it is clear that a licensing fee is required if the ordinance is to be enforced by the City. The City Council expressly considered this issue and decided that $500 was a reasonable estimate of the costs of administration. The court in cases like this one, does not sit as a super legislature to weigh the niceties of legislation. *See J.B.K., Inc.,* 641 F.Supp. at 904. There is a rational basis for requiring the $500 annual licensing fee and that fee does not violate the Equal Protection Clause.

■ Paragraph 8 of Clampitt's affidavit challenges section 7–14 of the ordinance, which authorizes inspections to determine compliance with the ordinance.[2] Similar provisions have survived fourth amendment scrutiny. *See Pollard,* 578 F.2d at 1001–02. *See also Harper,* 616 F.2d 853 n. 7; *City of Indianapolis v. Wright,* 267 Ind. 471, 371 N.E.2d 1298, 1302 (1978). Subsection (c) of section 7–14 clearly states

that such inspections are necessary to determine compliance with the ordinance. The plaintiff has presented no evidence to suggest that this provision is not rationally related to the City's legitimate interests. Accordingly, this inspection provision does not violate the Equal Protection Clause.

■ Clampitt's affidavit states that the ordinance's requirement that a personal profile of employees be submitted to the Fort Wayne Police Department would make it increasingly more difficult for her to hire competent people.[3] But the plaintiff's hiring difficulties do not translate into constitutional infirmities. The plaintiff must ultimately demonstrate that the requirement is not rationally related to a legitimate state interest. She has not even attempted to do so and similar requirements have been upheld in other cases. *See Harper,* 616 F.2d at 855, 861 (upholding sections of a similar ordinance requiring massage establishments to keep lists of the names and addresses of all employees, both on and off duty). This requirement is rationally related to the City's interest in preventing the spread of communicable diseases and in protecting public health.

■ In paragraphs 10 and 19 of her affidavit, Clampitt challenges certain exemptions provided for in the ordinance.[4]

---

2. Section 7–14 reads as follows:

Sec. 7–14. Inspection required.

(a) It shall be the duty of the city controller through duly authorized representatives to inspect massage and nude modeling establishments from time to time to determine compliance with this article.

(b) Inspections are to be made at reasonable times, with due regard to the nature of the business to be inspected.

(c) Upon showing the proper credentials, the representatives of the city controller, including police officers, shall be entitled to inspect portions of the massage or nude modeling establishment open to the public to determine compliance with this article.

3. Section 7–4(a) requires, as a part of the application, that "A list of all employees of the establishment, including all massagists, nude models and any and all other employees with the address, social security number, date of birth, next of kin, and two color portrait photographs at least three (3) inches by three of each and every employee [be submitted with the application]."

4. The exemptions are contained in section 7–3, which reads as follows:

Sec. 7–3. Exemptions.

This article shall not apply to the following establishments:

(a) Hospitals, nursing homes, sanitariums or other health care facilities licensed under the State of Indiana.

(b) Barbershops and beauty parlors, licensed under the laws of the State of Indiana, and/or employing licensed barbers or beauty culturists, provided that such massage as is practiced is limited to the head and scalp of the customer or client.

(c) Accredited schools and colleges and not-for-profit corporations organized for educational, literary, scientific, religious or charitable purposes that are exempt from federal taxation under the Internal Revenue Code, and any organization that exclusively provides models for said schools, colleges and not-for-profit corporations.

(d) Establishments holding permits issued pursuant to the alcoholic beverage laws of the State of Indiana.

Similar exemptions have been upheld in other cases, *Pollard*, 578 F.2d at 1013, and there are certainly rational reasons for exempting these establishments from the purview of the ordinance. As the court in *Pollard* noted, the exempted establishments "are not likely to pose the danger—which the ordinance was intended to alleviate—of serving as subterfuges for prostitution." *Id.* at 1013. The City Council proceedings make it abundantly clear that the exemption afforded body work practitioners (an exemption to which the plaintiff specifically points) was intended to exclude massagists who are certified or who hold a diploma or other certificate from a recognized school of massage. The City Council thought that such certificates would provide the necessary safeguards for body work practitioners, so that there would be no need to license them. The plaintiff's affidavit testimony that she has not seen or experienced any difference in conduct where an individual is a "body work practitioner" does not suggest that the City Council did not have a rational basis for drawing that distinction. It suggests only that she disagrees. Again, no evidence has been presented to show that the City Council had no rational basis for its action and this challenged provision does not violate the Equal Protection Clause.

■ The plaintiff also attempts to challenge the ordinance's regulation of hours and argues that if she is forced to close Tender Touch at 10:00 p.m. her business interests will be "severely curtailed." Again, the plaintiff has not presented evidence to show that the City Council had no rational basis for this portion of the ordinance.[5] Indeed, an identical provision was upheld in *Pollard*, 578 F.2d at 1013–14 n. 12. The obvious rational basis for this requirement is that illegal sexual conduct is most likely to take place at night, so that the closing of massage establishments during those hours will curtail illegal sexual conduct. There is no evidence to suggest that this requirement is not rationally related to a legitimate state interest and the plaintiff's equal protection challenges to this provision must also fail.

■ Paragraph 16 of Clampitt's affidavit questions the requirement that doors to massage rooms not be capable of being secured from the inside.[6] An identical provision was upheld in *Harper*, 616 F.2d at 855 n. 12. The court found that the provision pertaining to locks allowed for reasonable administrative searches, discouraged illicit behavior, and eliminated potential fire traps. *Id.* at 855. *See also Pollard*, 578 F.2d at 1014 (upholding provision allowing warrantless administrative searches of massage parlors at police discretion). This court agrees that section 7–15 is rationally related to the City's legitimate interest in discouraging illicit behavior and protecting the health of the community, by allowing for reasonable administrative searches. This provision, therefore, also survives equal protection scrutiny.

■ Paragraph 14 of Clampitt's affidavit states that if she and her employees are only allowed to conduct massage on members of the same sex her business enterprise would be severely damaged.[7] Again, the plaintiff has offered no evidence to rebut the presumption of constitutionality. Similar provisions have survived equal protection scrutiny, *see Hogge v. Johnson*, 526

---

(e) Establishments owned and operated by body work practitioners and which employ only body work practitioners as massagists. The ordinance defines "body work practitioners" in section 7–1(k) and (*l*).

**5.** Section 7–13 provides that no massage or nude modeling establishment shall be kept open for any purpose between the hours of 10:00 p.m. and 8:00 a.m. and no person shall allow a massage or nude modeling establishment to remain open for any purpose between the hours of 10:00 p.m. and 8:00 a.m.

**6.** Section 7–15 provides that "It shall be unlawful for any massage service or nude modeling to be carried on within any cubicle, room, booth, or area within a massage or nude modeling establishments which is fitted with a door capable of being locked."

**7.** The ordinance prohibits opposite sex massages. Section 7–15(f) provides that "It shall be unlawful for any person to massage a person of the opposite sex, except upon the signed prescription of a licensed physician, osteopath, chiropractor, or registered physical therapist."

F.2d 833 (4th Cir.1975), *cert. denied*, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (1976), and the plaintiff has not cited to any cases to support her position. This provision is rationally related to the City's interest in discouraging illicit sexual conduct. It does not violate the Equal Protection Clause.

## B.

### Procedural Due Process

The complaint states a procedural due process claim which was not dismissed by the court in its earlier order and which is part of the defendant's motion for summary judgment. The plaintiff's response brief does not explain the nature of this claim. The only reference to the ordinance which would implicate procedural due process concerns is found in paragraphs 20 and 21 of Clampitt's affidavit. In those paragraphs, Clampitt expresses concern over the procedure contained in the ordinance for suspension and revocation of her license.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). For purposes of argument, the defendant conceded in its reply brief that Clampitt has a property or liberty interest, requiring due process before deprivation. The court is not so sure. The plaintiff has not explained what her protectable interest consists of. Presumably, it consists of liberty of occupation. *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir.1987). But occupational liberty only applies to "common occupations of the community," *Scott v. Village of Kewaskum*, 786 F.2d 338, 340–41 (7th Cir.1986), and once the law reverses the presumption of free entry into an occupation, it diminishes or extinguishes the liberty interest which a person has in pursuing that occupation. *Id.* at 341. Perhaps the business of massage, like the sale of liquor, *see Scott*, 786 F.2d at 340–41, is not a common occupation which invokes occupational liberty. *See Pollard*, 578 F.2d at 1014 (noting similarities between the sale of liquor and the business of massage). Or perhaps the City ordinance does not work a deprivation, but rather, merely curtails occupational freedom. *See, e.g., Illinois Psychological Assn. v. Falk*, 818 F.2d 1337, 1343–44 (7th Cir.1987). If that is the case, then there is no need for procedural protections. But these arguments have not been vigorously pursued by the City, which as noted earlier, has conceded that the plaintiff has a protectable interest.

■ Since the City has conceded that the plaintiff has a protectable interest, the court too will assume as much and will examine the procedural protections afforded the plaintiff by the ordinance. As noted earlier, the plaintiff's only apparent complaint has to do with suspension or revocation of her license. But the ordinance specifically provides that revocation or suspension of a license may only take place after notice and a hearing.[8] When the City Controller sets a hearing in a revocation or suspension proceeding, the licensee has at least 20 days written notice and the notice contains the charges made, as well as the time and place where the hearing will be held.[9] The essential elements of procedural due process are notice and an opportunity to be heard. *Jackson Water Works v. Public Utilities Comm'n.*, 793 F.2d 1090, 1097 (9th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1334, 94 L.Ed.2d 184 (1987), citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148–1156, 71 L.Ed.2d 265 (1982) and *Board of Regents v. Roth*, 408 U.S. 564, 570–71 n. 8, 92 S.Ct. 2701, 2705–06 n. 8, 33 L.Ed.2d 548 (1972). The ordinance in question provides both notice and an opportunity to be heard before revocation or suspension. Similar ordinances, with less procedural protections

---

**8.** Section 7–7(c) provides that "Any license issued under this article may be revoked or suspended by the City Controller for cause listed in this article after notice and a hearing."

**9.** Section 7–7(d) provides "not less than twenty (20) days written notice, which notice shall contain the charges made, as well as [the] time and place where the hearing will be held."

before revocation or suspension, have been upheld. *See Harper v. Lindsay,* 616 F.2d 849, 857–58 (5th Cir.1980) (upholding ordinance without predeprivation hearing, without right to counsel, right to cross-examination of witnesses).

Fort Wayne's ordinance contains not only the essential elements of procedural due process, it also grants the licensee the right "to be represented by counsel, to present witnesses, to testify and cross-examine any other witnesses, and to subpoena witnesses."[10] Written reasons for the decision must be issued under the terms of the ordinance and the licensee must be notified of her right to appeal any adverse decision to the courts of the state of Indiana.[11] As noted earlier, the right to an attorney or to cross-examine witnesses is not an essential part of procedural due process in cases like this, *see Harper,* 616 F.2d at 858, and even the failure to provide appellate review is not always fatal. *Jackson,* 793 F.2d at 1097. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews,* 424 U.S. at 334, 96 S.Ct. at 902. Assuming the existence of a protectable interest, it is the court's conclusion that Fort Wayne's ordinance does not deprive licensees of procedural due process prior to revocation or suspension of a license.

### C.

*Vagueness*

The ordinance contains certain definitions and procedures which the plaintiff apparently contends are void for vagueness. The plaintiff's brief in opposition to the motion for summary judgment does not sufficiently explain how the challenged provisions are vague. Again, the court is forced to rely almost exclusively on Clampitt's affidavit, which outlines, in a cursory matter, those provisions which Clampitt apparently finds vague.

10. *See* Section 7-7(e).

11. Section 7-7(g) provides that "If any decision adverse to the applicant or licensee is made by the city controller after a hearing as provided above, the city controller shall provide the appli-

"In a facial challenge to the ... vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Est. v. Flipside, Hoffman Estates,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnote omitted). If, as in this case, the challenged law implicates no constitutionally protected conduct, the court must uphold the vagueness challenge *"only if the enactment is impermissibly vague in all of its applications." Id.* at 495, 102 S.Ct. at 1191 (emphasis supplied). *See also Chicago Bd. of Realtors, Inc. v. City of Chicago,* 819 F.2d 732, 739 (7th Cir.1987). Vagueness challenges must be confined to the parties before the court when no first amendment rights are involved. The plaintiff has not even argued that first amendment rights are involved, so that she cannot challenge provisions which are arguably vague as applied to others, but which are clear as applied to her, i.e., the exemption for accredited institutions for higher learning. *See Hoffman,* 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7. *See also United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975); *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974). The reason for this is that the complainant must prove that the enactment is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinatti,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

The standards for evaluating vagueness were enunciated in *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). A person must be given a reasonable opportunity to know what the law prohibits so that he may act accordingly. *Id.* If arbitrary and discriminatory enforcement is to be

cant or licensee with a written reason for such decision, as well as a notice of the applicant's or licensee's right to appeal to the Courts of the State of Indiana."

prevented, then laws must provide explicit standards. *Id.* But in determining whether a law is "impermissibly vague in all of its applications," *Hoffman,* 455 U.S. at 497, 102 S.Ct. at 1193, the standards applied should not, of course, be mechanical. *Id.* at 498, 102 S.Ct. at 1193. Courts are obliged to favor interpretations which render a statute constitutional. *Mini Spas, Inc. v. South Salt Lake City Corp.,* 810 F.2d 939, 943 (10th Cir.1987). The degree of vagueness tolerated by the constitution "depends in part on the nature of the enactment." *Id.* 455 U.S. at 498, 102 S.Ct. at 1193. Economic regulation is subject to a less strict vagueness test. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). *See also Levas & Levas v. Village of Antioch, Illinois,* 684 F.2d 446, 452 (7th Cir. 1982). Moreover, laws like the one in question, which contain only civil penalties, are also given greater tolerance. *Barenblatt v. United States,* 360 U.S. 109, 137, 79 S.Ct. 1081, 1098–99, 3 L.Ed.2d 1115 (1959). Even the speculative danger of arbitrary enforcement does not render an ordinance void for vagueness in a preenforcement challenge to a law. *Hoffman,* 455 U.S. at 504, 102 S.Ct. at 1196. *Cf. Papachristou,* 405 U.S. at 168–71, 92 S.Ct. at 846–48.

With these standards in mind, the court turns to the specific challenged provisions. Plaintiff Clampitt attempts to challenge section 7–3(e), which exempts "body work practitioners" from the purview of the ordinance. This challenge must fail simply because Clampitt knows, whatever the meaning of "body work practitioners," that she does not fall within the exemption, so that the challenged provision is clear as it applies to her. *Hoffman,* 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7. Assuming *arguendo* that Clampitt could challenge this provision, the phrase "body work practitioner" is not vague in the sense that ordinary people cannot understand what it means, *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298–99, or in the sense that it encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).[12]

Plaintiff Clampitt, in paragraph 10 of her affidavit, states that she is uncertain what "good cause" means as it relates to revocation. But section 7–6 of the ordinance, entitled "Cause for denial, revocation or suspension of license," specifically defines "good cause."[13] The portions of

---

**12.** The ordinance specifically defines "body work practitioners" in section 7–1(k) as "Any person who: 1. Submits a certificate by a licensed physician, chiropractor, or osteopath who practices in Allen County, Indiana, that the person is competent and efficient as a body work practitioner, or 2. who holds a diploma or other certificate of graduation from a recognized school of massage."

**13.** Section 7–6 defines "good cause" as follows:
Sec. 7–6. Cause for denial, revocation or suspension of license.
The city controller may deny, revoke, or suspend an establishment license for the following reasons:
(a) The correct license fee has not been tendered to the city.
(b) The applicant for, or holder of, a license, if an individual; or any of the stockholders holding more than ten (10) per cent of the stock of the corporation, any of the officers and directors, if the applicant or license holder is a corporation; or any of the partners, including limited partners, if the applicant or license holder is a partnership; or the manager or any other person principally in charge of the massage or nude modeling establishment, has been convicted of any of the following offenses or convicted of an offense without the State of Indiana that would have constituted any of the following offenses if committed within the State of Indiana, in the past five (5) years:
(1) An offense involving the use of force or violence upon the person of another that amounts to a felony pursuant to the laws of the State of Indiana.
(2) An offense involving sexual misconduct, which constitutes a felony or misdemeanor under the laws of the State of Indiana.
(c) The applicant for or holder of a license has knowingly made any false, misleading, or fraudulent statement of fact in the license application, or in any document required by the City in connection with this article.
(d) The applicant or license holder has had an establishment, massagist, or other similar permit or license denied, revoked, or suspended by the city or any other state or local agency within the past five (5) years.
(e) The applicant, if an individual, or any of the officers and directors, if the applicant is a corporation; or any of the partners, including

the ordinance which deal with both the issuance of a license and with the denial, revocation, or suspension of a license, points specifically to section 7–6. *See, e.g.,* section 7–5 and section 7–7, respectively. The meaning of good cause is abundantly clear. The court is convinced that ordinary people can understand exactly what is meant by good cause, as it is defined in section 7–6. *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298–99.

 The last provision which the plaintiff alleges is void for vagueness is the provision which allows for suspension of a license. Section 7–7(c) provides that "any license issued under this article may be revoked or suspended by the city controller for the causes listed in this article after notice and a hearing." As noted earlier, the causes for suspension are specifically outlined in section 7–6. *See* footnote 13, *supra.* Clampitt argues that the ordinance contains no provisions setting forth the time period of the suspension or the method of reinstatement once suspended. Obviously if a license is suspended for noncompliance with the City's zoning laws or health regulations for example, *see* 7–6(g), the suspension would continue until the noncompliance was cured. There is little danger of arbitrary enforcement here because a license may not be revoked under the terms of the ordinance unless and until a hearing is held, with notice of the charges. *See* section 7–7(d). At that hearing, a licensee would be permitted not only to challenge the potential suspension or revocation, but could also inquire as to the guidelines for reinstatement if the license is in fact suspended or revoked. As another court has noted in a similar case, an ordinance "will be void for vagueness if it

fails to give a person of ordinary intelligence fair notice of offending conduct, or if it encourages arbitrary and erratic arrests and convictions." *J.B.K., Inc.,* 641 F.Supp. at 907. The challenged provision is sufficiently clear so that ordinary people can understand what constitutes suspension, and given the licensee's right to a hearing prior to suspension, there is little change of "arbitrary and discriminatory enforcement." *Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858. Accordingly, this provision too survives the plaintiff's vagueness challenge.

### D.

### *Conclusion*

Defendant's motion for summary judgment is GRANTED in its entirety. The ordinance does not violate the Equal Protection Clause, the ordinance affords adequate due process procedures, and the ordinance is not void for vagueness. In this pre-enforcement facial challenge, no genuine issues of material fact have been brought to the court's attention which would suggest that summary judgment is inappropriate. Accordingly, the defendant's motion for summary judmgent is hereby GRANTED.

limited partners, if the applicant is a partnership; and the manager or other person principally in charge of the operation of the business, is not over the age of twenty-one (21) years.
(f) The application was not completely filled out or the application was not correctly filled out.
(g) The establishment would not comply with all applicable laws, including but not limited to, the city's building, zoning, and health regulations, and with this article.

(h) Any person has committed, on the premises of the establishment, an act that would constitute prostitution pursuant to the laws of the State of Indiana, or any offense involving narcotics, dangerous drugs, or gambling, whether or not such person has been convicted of such prostitution, narcotics, dangerous drugs or gambling offense under the laws of the State of Indiana.
(i) The establishment or any employee of the establishment has not complied with the provisions of this article.