9 F.3d 112
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Mae A. ENGRON, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF LABOR, Defendant-Appellee.
 No. 92-3765.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 30, 1993.[1]
Decided Oct. 21, 1993.
Rehearing Denied Jan. 10, 1994.
 
 Before POSNER, Chief Judge, and RIPPLE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Mae A. Engron sought benefits under the Federal Employees' Compensation Act from the United States Department of Labor for a job-related injury. We deny plaintiff's motion for appointment of counsel; and we AFFIRM for the reasons stated in the attached district court order granting summary judgment in favor of defendant.[2]
 
 UNITED STATES DISTRICT COURT
 SOUTHERN DISTRICT OF INDIANA
 INDIANAPOLIS DIVISION
 
 2
 MAE A. ENGRON, Plaintiff,
 
 
 3
 vs.
 
 
 4
 UNITED STATES DEPARTMENT OF LABOR, Defendant.
 
 CAUSE NO. IP 90-1542-C
 ORDER ON MOTION FOR SUMMARY JUDGMENT
 
 5
 Defendant, the United States Department of Labor ("DOL"), has moved for summary judgment on the sole issue remaining in this cause: whether the DOL either actually or constructively deprived plaintiff Mae Engron's previously granted claim for benefits for injuries to her left arm without due process of law. See Order on Motion to Alter or Amend Judgment (Jan. 21, 1991), at 3. The Court heard arguments on September 22, 1992, and the motion is fully briefed. For the reasons discussed below, the Court GRANTS the DOL's motion.
 
 I. BACKGROUND
 
 6
 These relevant facts are not disputed. On or about May 15, 1975, Mae Engron was injured on the job while employed by the U.S. Postal Service. She filed a claim with the DOL's Office of Worker's Compensation Programs ("OWCP"), seeking benefits under the Federal Employees' Compensation Act. Mrs. Engron's claim, which dealt with an injury to her left arm and elbow, was approved on August 1, 1975, and she began receiving payment for all medical expenses associated with that injury. Mrs. Engron also received a 10% permanent partial impairment award.[1]
 
 
 7
 On October 17, 1983, Mrs. Engron wrote the OWCP to file a new claim for compensation, contending that the injury to her left arm had progressed, via "sympathetic dystrophy," to her right arm and hand. She was seeking an increase in the impairment rating and the attendant award. The OWCP, in response, told Mrs. Engron she would have to provide certain information and medical reports to support her contention. Both letters referred to her original left arm injury, as distinguished from its alleged progression into her right arm.
 
 
 8
 Mrs. Engron took no further action until January 14, 1987, when she sent another letter to the OWCP. This letter informed the agency, once again, of Mrs. Engron's belief in an extended injury, and made clear that she was seeking a higher disability rating. On the same day, Mrs. Engron wrote Congressman Andy Jacobs, indicating that she wished to file a new claim with the OWCP based on what she perceived to be an aggravation of her old left arm injury, and telling him that the problem had progressed into her upper spine and right arm. She made no reference to the left arm.
 
 
 9
 Between the time of her 1983 letters and her January 1987 letters to the OWCP and Congressman Jacobs, Mrs. Engron apparently continued to receive medical payments for her left arm; she has registered no complaint about that time period regarding left arm benefits, and the DOL's records show payments being made to her as late as April and May 1987. It is clear, therefore, that neither Mrs. Engron nor the DOL were confused to any degree about the nature of her entitlement.
 
 
 10
 Congressman Jacobs passed along Mrs. Engron's concerns to the OWCP. The OWCP responded in a letter dated March 4, 1987, explaining that Mrs. Engron had previously prevailed on the claim regarding her left arm injury, but also telling Congressman Jacobs essentially what it had told Mrs. Engron in 1983: that she needed to present new evidence if she wished to expand her previous benefit award.
 
 
 11
 On June 23, 1987, the OWCP sent separate letters to Congressman Jacobs and Mrs. Engron. In the letter to Congressman Jacobs, which was sent in response to Mrs. Engron's request for a higher disability rating, the OWCP said that it had not been given sufficient evidence to conclude that Mrs. Engron had an ongoing work-related disability, beyond that previously established for her left arm. Similarly, the OWCP told Mrs. Engron that there was insufficient evidence at that time to reopen her case, and said that it was returning to her certain bills she had submitted for reimbursement, but which were not payable.
 
 
 12
 Mrs. Engron pressed ahead with her expanded claim, but in the meantime continued to apply for and receive benefits for her left arm. DOL records show that Mrs. Engron made no reimbursement applications from June 1987 to March 1988. A few sporadic reimbursements then were made over the next several months. In March 1988, one of Mrs. Engron's providers, the Associates of Orthopedic Surgery ("Associates") received $68.00. On or about July 2, 1988, Mrs. Engron received a payment of $5.00, and she got additional reimbursements in August and September 1988. In November and December 1988, the OWCP made further payments to Associates. Neither Mrs. Engron nor the DOL was confused during this period as to the injury for which Mrs. Engron was receiving medical benefits.
 
 
 13
 On July 28, 1989, the OWCP denied Mrs. Engron's expanded claim in a letter that clearly stated she was still entitled to medical benefits for her left arm. Further reimbursements were paid, either to Mrs. Engron directly or to her providers, after this 1989 denial, and it is undisputed that these payments were for treatment and medication of her left arm.[2] Mrs. Engron appealed the July 1989 denial to the Branch of Hearing and Review on August 11, 1989; this appeal was denied. Her request for reconsideration of the denial was refused in a May 10, 1990 letter, which reaffirmed that benefits for her left arm injury still were payable, and also referred to the January 28, 1989 letter containing the same information. Mrs. Engron did not appeal this final denial, and instead commenced action in this Court on July 2, 1990.
 
 
 14
 Mrs. Engron's claim, as it currently stands, is that the OWCP's letters to Congressman Jacobs on June 23, 1987 and September 8, 1987 terminated the benefits to which she was entitled for her left arm injury,[3] and that this termination, which occurred without any notice or hearing, was arbitrary and capricious. Alternatively, she asserts that even if these letters did not actually terminate her benefits, the OWCP's failure to pay submitted medical bills for her left arm after denying payments for her right arm, and its concordant failure to explain the situation to her adequately, amounted to a constructive termination of those benefits. The DOL moved for summary judgment on April 9, 1992, arguing that it never terminated Mrs. Engron's benefits for her left arm, either actually or constructively, because all bills concerning treatment for that arm, when properly submitted in writing, were paid. Mrs. Engron responded on July 6, 1992, and the DOL replied on July 23, 1992.
 
 II. SUMMARY JUDGMENT STANDARD
 
 15
 Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56(c) provides that
 
 
 16
 judgment sought shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 17
 Therefore, when the standard embraced in Rule 56(c) is met, summary judgment is mandatory. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. Celotex, 477 U.S. at 327. Decisions of the Seventh Circuit conform to this view. See, e.g., Patrick v. Jasper County, 901 F.2d 561, 565 (7th Cir.1990); Spellman v. Commissioner, 845 F.2d 148, 151-52 (7th Cir.1988).
 
 
 18
 Moreover, the mere existence of a factual dispute is not by itself sufficient to bar summary judgment; the disputed fact must be outcome determinative. Anderson, 477 U.S. at 248; International Bhd. of Boilermakers v. Local D354, 897 F.2d 1400, 1406 (7th Cir.1990). The party opposing a motion for summary judgment bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Clampitt v. Ft. Wayne, 682 F.Supp. 401 (N.D.Ind.), aff'd, 864 F.2d 486 (7th Cir.1988).
 
 III. DISCUSSION
 
 19
 Due process comes into play whenever a person is deprived of an interest in life, liberty, or property without appropriate notice or opportunity to be heard. Bell v. Burson, 402 U.S. 535, 542 (1971); Beerly v. Dep't of Treasury, 768 F.2d 942, 948 (7th Cir.1985), cert. denied, 475 U.S. 1010 (1986). There is no question that Mrs. Engron had a property interest in continuing to receive medical benefits for the injury to her left arm. See Goldberg v. Kelly, 397 U.S. 254, 261-63 (1970); United States v. Vetti, 681 F.Supp. 986, 990 (D.Conn.1988). It appears, however, that no deprivation of that interest occurred here.
 
 
 20
 The defendant, in meeting its initial summary judgment burden, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), has presented substantial evidence that Mrs. Engron's benefits for her left arm injury never were terminated, constructively or otherwise. The affidavit of OWCP claims examiner Marie A. Wyman, along with its accompanying exhibits, establishes several important facts: (1) that the OWCP never issued any formal Compensation Order denying Mrs. Engron benefits pertaining to her left arm, see Affidavit of Marie A. Wyman, p 23 [hereinafter "Wyman Aff."]--a point which Mrs. Engron concedes; (2) that while the OWCP denied benefits for Mrs. Engron's right arm, it made clear in its July 28, 1989 letter that treatment for her left arm injury was still compensable, see Wyman Aff., paragraphs 18, 20 & attachments L, P; and (3) that the OWCP fully paid all properly submitted bills for treatment of Mrs. Engron's left arm. Wyman Aff., p 24 (period through March 28, 1992). In fact, every properly submitted bill was paid within six weeks of its receipt by the DOL.
 
 
 21
 Mrs. Engron first attempts to overcome this evidence by claiming that the OWCP's "unambiguous" letters of June 23, 1987 and September 8, 1987 "actually and constructively terminated" her left arm benefits, and that she and her "medical advisors" relied on the "mistaken representation that no more benefits would be honored." Plaintiff's Response at 3-4. This claim has two flaws. First, the OWCP's letters to Congressman Jacobs cannot be reasonably read as having terminated Mrs. Engron's left arm benefits; they simply denied the relief Mrs. sought--i.e., a higher disability rating and benefits for treatment of her right arm. The June 23, 1987 letter, in fact, drew a clear distinction between Mrs. Engron's preexisting injury, and the claim related to her right arm.[4]
 
 
 22
 Second, even if Mrs. Engron and her "medical advisors" erroneously believed that these letters terminated her left arm benefits, this assumption would not have caused any "constructive termination"; it simply would have been a mistake about the letters' effect. Mrs. Engron has offered no real proof that she was denied medical assistance because the OWCP terminated her left arm benefits. As already mentioned, every properly submitted bill for left arm treatment was paid; the OWCP's billing summary, see Wyman Aff., attachment Q, shows numerous claims that were paid from 1989 forward. Some delays did occur, but every properly submitted bill was paid within six weeks--a period by no stretch long enough to constitute constructive termination. Any longer payment delays arose solely from Mrs. Engron's failure (or that of her doctors) to submit bills promptly for reimbursement.
 
 
 23
 In further support of her constructive termination claim, Mrs. Engron states that she received no left arm reimbursements from the time she applied for a increased impairment rating in 1987 until her suit was filed. The record reflects, however, that the OWCP made reimbursement payments in the summer and fall of 1988, in October and December 1989, and on numerous occasions in 1990. The record also shows that payments were made in furtherance of the OWCP's obligation to provide medical benefits to which Mrs. Engron became entitled prior to filing her suit. During the hearing on this matter, Mrs. Engron cited one specific instance in which she claimed that properly submitted bills were not paid, when the OWCP did not pay two bills for $120.00 and $30.00 sent in by a Dr. Hague. Mrs. Engron admitted during the hearing, however, that these bills actually had been paid. She insisted that payment for these bills, which was sent less than 24 hours after her complaint was filed, was made only in response to the suit. This argument cannot survive close scrutiny, however; Mrs. Engron's complaint sought review only for the OWCP's denial of her left arm claims, and was not even served on the DOL until after Dr. Hague's bills had been paid.
 
 
 24
 Quite simply, Mrs. Engron's medical benefits for her left arm were never terminated, actually or constructively. Because no termination means no deprivation, and no deprivation means no due process violation, the DOL is entitled to summary judgment.
 
 IV. CONCLUSION
 
 25
 The frustration experienced by Mrs. Engron in this matter is easily understandable; so often, a citizen, who wants nothing more than the entitlement due her, faces enormous bureaucratic obstacles in trying to get it. Her frustration, however--while genuine and unfortunate--did not stem from any deprivation of life, liberty, or property without due process of law. Accordingly, the DOL's motion for summary judgment is GRANTED, and this cause is DISMISSED WITH PREJUDICE.
 
 
 26
 SO ORDERED this 16th day of October, 1992.
 
 
 27
 /s/ Larry J. McKinney
 
 LARRY J. McKINNEY, JUDGE
 United States District Court
 Southern District of Indiana
 Distribution to:
 Michael K. Sutherlin
 Attorney at Law
 2550 First Indiana Plaza
 135 North Pennsylvania Street
 Indianapolis, IN 46204
 Jill Zengler
 OFFICE OF THE UNITED STATES ATTORNEY
 5th Floor U.S. Courthouse
 
 28
 46 E. Ohio St.
 
 Indianapolis, IN 46204
 
 
 [1]
 After preliminary examination of the briefs the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [2]
 We note that at page 4 and page 9 there are two uninitialed, handwritten changes
 
 
 [1]
 When the time came for Mrs. Engron to receive compensation (i.e., retirement) benefits in 1981, she allowed to choose from which source to receive these benefits. Mrs. Engron elected to receive her compensation benefits from the Office of Personnel Management, but this did not affect her right to medical benefits from the OWCP
 
 
 [2]
 Mrs. Engron testified that she did not remember receiving all these payments, yet she did not deny receiving them. She did deny receiving an August 17, 1989 check for $80.00, and a November 8, 1990 check for $90.00, saying that she would certainly have remembered checks of that size. Even if she did not receive those checks, however--and OWCP records show that they were sent--there was no actual or constructive termination of benefits so as to implicate the due process clause. Additionally, she did not deny getting the 1987 and 1988 checks referenced above
 
 
 [3]
 Mrs. Engron also claims that a hospital receptionist told her in June 1987 that she was not entitled to any benefits for her left arm. Mrs. Engron, however, has filed no affidavit from the receptionist proving this statement
 
 
 [4]
 Similarly, the comments of a receptionist (even if considered by the Court, see supra note 3) do not constitute official notice of benefits termination